**UNITED STATES of America**

v.

**Raynard FREEMAN, et al., Defendants.**

**No. CR. 03–201(RJL).**

United States District Court, District of Columbia.

Dec. 19, 2003.

John M. Maloney, U.S. Attorney's Office, Washington, DC, for Plaintiff.

David Walker Bos, Federal Public Defender, Edward Charles Sussman, Washington, DC, for Defendants.

### MEMORANDUM OPINION
### AND ORDER

LEON, District Judge.

Defendants Nathaniel Pondexter and Reynard Freeman have both filed motions to suppress as the fruit of an illegal search all tangible evidence seized during a search of the co-defendants on April 17, 2003. Pondexter has also made a motion

to suppress statements that he gave to the police.

After considering the defendant's motions, the government's opposition thereto, the testimony of Officer Larson at the suppression hearing held on August 19, 2003, and arguments of counsel before this Court, the Court denies defendants' motions to suppress tangible evidence.

## I. Background

In an indictment dated May 13, 2003, both defendants were charged with Unlawful Possession with Intent to Distribute 50 Grams or More of Cocaine Base in violation of 21 U.S.C. § 841(a)(1) and 841(b)(1)(A)(iii) and 18 U.S.C. § 2; and Unlawful Possession with Intent to Distribute Cocaine in violation of 21 U.S.C. § 841(a)(1) and 841(b)(1)(C). In the same indictment, defendant Pondexter was additionally charged with Simple Possession of a Controlled Substance (marijuana) in violation of 21 U.S.C. § 844(a). All charges are based on evidence seized during a traffic stop and subsequent search that occurred on the border of the District of Columbia and Silver Spring, Maryland, on April 17, 2003.

On that date, shortly before 6:00 p.m., Officer Straughn, of the Montgomery County Police Department, stopped a vehicle that had just crossed into Maryland driven by defendant Pondexter because he believed that the temporary tags on the vehicle were fraudulent.[1] Aug. 19, 2003 Suppression Hr'g Tr. at 7, 24. Defendant Freeman and a juvenile, who was not charged, were passengers in the car. Shortly thereafter, Officer Larson, also of the Montgomery Country Police Department, who was on patrol in downtown Silver Spring, arrived at the scene of the traffic stop to assist Officer Straughn. As Officer Larson approached the vehicle, he noticed another set of temporary tags in the back seat of the car. In his experience, people who have fraudulent tags often have in the car multiple sets of tags that they can rotate into use. *Id.* at 9.

Accordingly, Officer Larson asked Pondexter if there were any other tags in the car or in the trunk. Pondexter said that there were not and consented to have the car and the trunk searched. When Pondexter opened the trunk and moved some dry cleaning at the officer's request, at least three additional sets of temporary tags were found. As Pondexter gathered up the tags, Officer Larson observed a loaded semiautomatic pistol magazine among the other belongings. Officer Larson then asked Pondexter if he had any weapons in the car. Pondexter responded that he did not and Officer Larson asked for consent to search him and the vehicle for weapons. Pondexter consented to both. *Id.* at 13. Officer Larson then conducted a pat down of Pondexter that yielded no weapons. Officer Larson next asked the juvenile passenger seated in the right rear seat for consent to search his person. Consent was given and no weapons were found. Next, Officer Larson asked Defendant Freeman, who was seated in the front passenger seat, if he had a weapon on him. He said no and consented to be searched.

During a routine pat down search of Freeman, however, Officer Larson found in Freeman's coat and pants pockets a digital scale and two large rolls of money.[2] As a result Officer Larson placed Freeman in handcuffs and conducted a more thorough search of his person. That search

---

1. Officer Straughn did not testify at the hearing.

2. Officer Larson testified that Freeman gave his consent before Officer Larson removed either item from Freeman's pockets. Hr'g Tr. at 14.

led to the discovery of a large bag of crack cocaine hidden in Freeman's groin area. Thereafter, Officer Larson searched the interior of the vehicle, recovering marijuana from the floorboard by the driver's seat. Moments later, while searching the trunk, Officer Larson found a black bag containing cocaine.

Thereafter, both defendants were taken to the police station where they were read their rights. Hr'g Tr. at 23. Pondexter agreed to give a statement and, in the course of that statement, stated in essence that he had known that Freeman was in possession of drugs. Hr'g Tr. at 23. He further indicated Freeman sells drugs but denied having any knowledge of the black bag in the trunk along with what he identified to be Freeman's laundry and other possessions. Gov't. Opp. to Severance at 3; *see also* Def. Freeman's Mot. to Sever at 2.

## II. Analysis

### A. Defendant Pondexter's Motion to Suppress Physical Evidence and Statements

Pondexter makes a number of arguments in support of his motion to suppress the evidence seized in this case. First of all, he argues that Officer Straughn lacked probable cause to effect a stop of the vehicle. Although Officer Straughn was not called as a witness, Officer Larson testified that Officer Straughn stopped the vehicle because he believed that the temporary tags on the car were fraudulent. Upon examination of the tags, Officer Larson testified that, in his experience, the tags appeared to be fraudulent. Hr'g Tr. at 85.

It is well-settled that when an officer has reasonable suspicion of unlawful conduct, he may make a traffic stop for the purposes of investigating further. *United States v. Whren*, 53 F.3d 371 (D.C.Cir.

1995). Because displaying fraudulent tags is unlawful and the tags were clearly visible, the Court finds that there was sufficient reason for Officer Straughn to stop Pondexter's vehicle and investigate further.

Pondexter further argues, in the alternative, that even if the stop was lawful, the search of the trunk was nonetheless impermissible. As Pondexter correctly points out, the Supreme Court held in *Chimel v. California*, 395 U.S. 752, 762–63, 89 S.Ct. 2034, 23 L.Ed.2d 685 (1969), and *New York v. Belton*, 453 U.S. 454, 101 S.Ct. 2860, 69 L.Ed.2d 768 (1981), that when a police officer effects a lawful arrest of an occupant of an automobile, the police officer may conduct a warrantless search incident to the arrest of the occupant and the passenger compartment of the automobile. This exception to the warrant requirement is limited to the area within the immediate control of the arrestee and does not ordinarily include the trunk. However, Officer Larson's warrantless search of the entire vehicle was valid if he had either permission or probable cause to believe that it contained evidence of criminal activity. *United States v. Ross*, 456 U.S. 798, 825, 102 S.Ct. 2157, 72 L.Ed.2d 572 (1982). In this case, he had both.

Probable cause to search exists "where in view of the 'totality of the circumstances,' 'there is a fair probability that contraband or evidence of a crime will be found in a particular place.'" *United States v. Gilliam*, 167 F.3d 628, 633 (D.C.Cir.1999) (citing *Illinois v. Gates*, 462 U.S. 213, 238, 103 S.Ct. 2317, 76 L.Ed.2d 527 (1983); *United States v. Turner*, 119 F.3d 18, 20 (D.C.Cir.1997)). Officer Larson's initial search of the trunk was performed with the consent and assistance of

Pondexter himself.[3] During the course of that search, Officer Larson personally observed three extra sets of temporary tags and a loaded pistol magazine *in the trunk*, in addition to another temporary tag on the back seat. The Court concludes that Officer Larson, as a result, had probable cause to believe that there was a fair probability that the trunk contained evidence of unlawful activity and his search therefore was proper.[4]

■ Finally, the Court also rejects Pondexter's unsupported allegation that he was interrogated in violation of *Miranda*. Officer Larson testified that he asked Pondexter general questions about the tags and weapons before he was arrested. There has been no evidence offered that there was any further questioning until after Pondexter was transported to the police station and advised of his rights, which he then waived. Therefore, the Court finds that Pondexter's statements need not be suppressed under *Miranda*.

## B. Defendant Freeman's Motion to Suppress

■ Freeman has similarly filed a motion to suppress some of the evidence seized by Officer Larson during his search of Freeman's person. In particular, Freeman argues that the portion of the search that led to the discovery of the bag of cocaine in Freeman's crotch violated the Fourth Amendment because Freeman had not consented to that search, and because probable cause did not exist to justify his arrest and, therefore, the fruits of the search conducted thereafter are not admissible. The Court disagrees.

Freeman consented to a limited search of his person that revealed a small digital scale and two large rolls of cash. Officer Larson testified that, in his experience, this type of scale is often associated with drugs. Hr'g Tr. 63. He went on to testify that while owning such a scale is not a crime, the presence of the scale together with the large amount of cash in Freeman's possession and the totality of the other circumstances of the stop (i.e. fraudulent tags, and a loaded pistol magazine), gave him probable cause to believe that the scale qualified as illegal drug paraphernalia under Maryland law,[5] and he accordingly placed him under arrest. Hr'g Tr. at 64.

■ Probable cause exists where the arresting officers have "facts and circumstances within their knowledge" that are reasonably trustworthy and would " 'warrant a man of reasonable caution' in the belief that an offense has been or is being committed." *Draper v. United States*, 358

---

3. In Pondexter's Summary Memorandum in Support of His Motion to Suppress Physical Evidence, Pondexter raises the argument that his consent was not voluntary because he did not feel free to leave. In light of Officer Larson's testimony, the Court holds that Pondexter's consent was knowingly and voluntarily given.

4. It is well established that once probable cause exists to search a car for certain contraband or evidence of a crime, any other contraband discovered is permissibly seized, so long as it is discovered in the course of a constitutional search. *See e.g. United States v. Caroline*, 791 F.2d 197 (D.C.Cir.1986).

5. Maryland Code Section 5–620(a)(2) prohibits the possession of "controlled paraphernalia under circumstances which reasonably indicate an intention to use the controlled paraphernalia for purposes of illegally administering a controlled dangerous substance." Subsection (b) lists a scale as an example of an item that potentially falls under this statute. Section 5–619 outlines factors to be taken into consideration when determining whether an object qualifies as drug paraphernalia under the circumstances.

U.S. 307, 313, 79 S.Ct. 329, 3 L.Ed.2d 327 (1959) (*quoting Carroll v. United States*, 267 U.S. 132, 162, 45 S.Ct. 280, 69 L.Ed. 543 (1925)). Moreover, probable cause does not require an absolute certainty, "only a probability or substantial chance" that a crime was committed. *Gates*, 462 U.S. at 243–244 n. 13, 103 S.Ct. 2317. The fact that possession of the scale alone does not necessarily constitute a criminal offense does not negate the reasonableness of Officer Larson's assessment of probable cause. The Court finds that probable cause existed to arrest the defendant based on the totality of the facts and circumstances known to him at the time, and therefore the subsequent search of the defendant's groin area was an appropriate search incident to lawful arrest. *United States v. Robinson*, 414 U.S. 218, 94 S.Ct. 467, 38 L.Ed.2d 427 (1973).

### III. Conclusion

For the reasons set forth above, and after considering the defendants' motions to suppress physical evidence and statements, the government's opposition thereto, and all the evidence before the Court, the Court hereby

**DENIES** defendant Pondexter's Motion to Suppress Physical Evidence and Statements [# 11]; and,

**DENIES** defendant Freeman's Motion to Suppress Physical Evidence [# 17].

**SO ORDERED.**